Myees, J.
 

 In these two cases the ultimate facts are substantially in accord. In each case plaintiff, the Superintendent of Banks, is attempting to collect from the defendant executor superadded liability assessed on the holders of bank stock by reason of the liquidation of The Ohio Valley Bank of Portsmouth, Ohio. The date of the assessment occurred prior to the amendment of the Constitution (Article XIII, Section 3) abolishing double liability on bank stock in Ohio.
 

 Keeping in mind that we have two actions for collection of the same claim, one, No. 26448, first filed in the Court of Common Pleas, and the other, No. 26449, started later in the Probate Court, we give herewith in chronological order the date's and events material to the question whether plaintiff complied with the statutes or was entitled to have the claim reinstated according to the provisions of Section 10509-134, General Code.
 

 January 4, 1932. Plaintiff, the Superintendent of Banks, took possession of The Ohio Valley Bank for the purpose of liquidation.
 

 March 12, 1932. Harry E. Taylor, owner of sixty-seven shares of stock in the bank, died testate.
 

 April 9, 1932, Defendant, Arthur H. Bannon, was
 
 *197
 
 appointed executor of the estate of Harry E. Taylor, deceased.
 

 August 9, 1932. Expiration of four months from date of appointment of executor.
 

 January 18,1933. Notice of contingent claim served on defendant 'executor by the plaintiff. Defendant took no action thereon. This amounted to a rejection of the claim.
 

 March 9, 1933. Expiration of two months after period of nine months allowed to collect the assets' of the estate.
 

 May 12,1933. Plaintiff determined definite liability and made assessment on bank stock.
 

 May 18, 1933. Plaintiff made written demand on executor defendant for payment of definite liability in the sum of $6,700. Demand was dated May 12, 1933, but did not reach executor until May 18.
 

 May 23, 1933. Defendant rejected in writing plaintiff’s claim of May 18, 1933.
 

 July 12, 1933. Expiration of two months after accrual of plaintiff’s cause of action.
 

 July 23, 1933. Expiration of two months from date of defendant’s rejection of claim.
 

 September 12, 1933. Action filed by plaintiff, the Superintendent of Banks, in the Court of Common Pleas and summons issued for defendant executor. This was the beginning of case No. 26448, herein.
 

 January 6, 1934. Another claim for the same liability was filed with defendant by plaintiff, the Superintendent of Banks. In this claim demand was made for the sum of $6,700, the same amount as demanded previously by plaintiff on May 18, 1933.
 

 January 8, 1934. The last mentioned claim was rejected by the executor “without prejudice to any and all former rejections thereof.”
 

 February 7, 1934. Plaintiff filed a petition in Probate Court for reinstatement of the claim filed by
 
 *198
 
 plaintiff. This action in Probate Court was the beginning of case No. 26449, herein.
 

 February 8, 1934. Supplemental petition filed by plaintiff in the Court of Common Pleas, in the action commenced September 12, 1933, and being case No. 26448.
 

 April 13, 1936. Probate Court refused to reinstate plaintiff’s claim and made the finding set forth in the statement of the case hereinabove.
 

 The following sections of the G-eneral Code are involved in the consideration of the cases at hand.
 

 Section 10509-112 relates to the presentation of claims and their allowance or rejection and reads as follows:
 

 “Creditors' shall present their claims, whether due or not due, to the executor or administrator within four months after the date of his appointment. Such executor or administrator shall allow or reject all claims, except contingent claims, within thirty days after their presentation. Any claim presented after the time herein provided shall not prevail as against
 
 bona fide
 
 purchasers or as against executors and administrators' who have acted in good faith, or against a surviving spouse who has made the election to take under the will or at law, and, except as to negotiable instruments maturing subsequent to the expiration of such time, any such late claim shall not prevail as against
 
 bona fide
 
 distributees.”
 

 Section 10509-133 (114 Ohio Laws, 431) sets forth the conditions under which a claim is barred and reads as follows:
 

 “If a claim against the estate of a deceased person has been presented to the executor or administrator, and has been disputed or rejected by him, but not referred to ref erees, the claimant, except as is otherwise provided by law, must commence a suit for the recovery of such claim within two months after such dispute or rejection, if the debt or any part of it be then due,
 
 *199
 
 or within two months after some part of it becomes due, or be forever barred from maintaining an action thereon. Except as is otherwise provided by law, no action shall be maintained thereon after such period, by a person deriving title thereto from such claimant. ’ ’ This section was later amended (116 Ohio Laws, 385), but the amendment is not applicable to the instant case.
 

 Section 10509-134 relates to the reinstatement of a claim not presented within the required time and reads as follows:
 

 “Upon petition filed by a creditor or person deriving title from him whose claim has not been presented within the time prescribed by law, the Probate Court, if after notice to all interested parties and hearing, it is of the opinion that justice and equity so require, and that the petitioner is not chargeable with culpable neglect in failing to present his claim within the time so prescribed, may permit petitioner to file his claim for allowance, but such allowance shall not affect any payment or distribution made before the filing of such claim, nor shall it prejudice the rights of creditors whose claims were filed within the time prescribed by law.”
 

 Section 10509-144 is concerned with the limitation of commencement of actions or claims filed with executors or administrators and reads as follows:
 

 “No executor or administrator shall be held to answer to the suit of any creditor of the deceased unless it be commenced within two months after the expiration of nine months following his appointment and any further time allowed by the court for the collection of the assets of the estate, except as otherwise provided by law. A creditor whose cause of action accrues before such estate is fully administered and after the expiration of nine months following the date of the appointment of. such executor or administrator and any further time allowed by the court for the collec
 
 *200
 
 tion of the assets of the estate, may begin and prosecute such action within two months after the accruing of such cause and before the estate is fully administered. No cause of action against an executor or administrator shall be barred by lapse of time, until the expiration of two months from the time it accrues.” (114 Ohio Laws, 433; effective January 1, 1932.) Since the commencement of the present actions this section was repealed. (116 Ohio Laws, 385; effective September 2, 1935.)
 

 We consider first the proceedings had in case No. 26448.
 

 The original petition filed in the Court of Common Pleas alleged that plaintiff had filed a proof of claim with the executor on January 18, 1933, and that the claim had been rejected. By an amendment filed on January 8, 1934, by leave of court, this allegation was stricken from the petition. The original petition, filed on September 12, 1933, states that “demand on each of said defendants was made by the said I. J. Fulton, Superintendent of Banks, for the amount of said double liability on the fifteenth day of May, 1933, further advising said stockholders that payment thereof must be made on or before the fifteenth day of July, 1933.” The records show that this claim and demand was rejected by the executor on May 23, 1933, but no mention is made of this in the petition.
 

 On February 8, 1934, a supplemental petition was filed by the plaintiff which alleged “that on the sixth day of January, 1934, proof of claim was duly presented and filed with said executor in the sum of $6,700 and that said claim was rejected on the eighth day of January, 1934, by said executor.” This allegation refers to the third claim filed with the executor and covers the same subject-matter contained in the claim filed on January 18, 1933, and also covering the same account contained in the definite claim of May 18,1933, and rejected May 23,1933. By thus removing from the
 
 *201
 
 original petition the allegation concerning previous demand and rejection of the claim and inserting in the supplemental petition the filing of the January 6th claim and its rejection, the plaintiff sought to bring himself within the provision of Section 10509-133, General Code, requiring action to be filed within two months after the rejection of a claim. Did the insertion of such allegation in the supplemental petition cure the defect in the original petition? May the situation be cured by merely making a new demand and then filing an action in court within the limitation period following the second demand? That is what was attempted by the supplemental petition in the instant case. If these two actions were not intertwined and if the court had not been cognizant of what had gone on before, such an allegation would perhaps have to be taken at its face value. Here, however, the record is replete with facts concerning two prior rejected demands, neither of which complied with the clear and mandatory provisions of the statute. Failure to follow a prior demand with an action in the Court of Common Pleas does not clothe the petitioner with the right to file a new demand merely for the purpose of filing a later action thereon, where the limitation period had already expired.
 

 To recapitulate: Whatever may be said of the first notice and demand of the plaintiff as a contingent claim, it was not filed within the four months period as required by law. Granting, for the sake of argument, that when the contingent claim was filed the plaintiff was not in a position to know whether there would be the necessity of an assessment according to law, nevertheless when the definite assessment for super added liability was made and a claim covering same was filed with the executor, that demand was not followed by court action within the limitation period required by law.
 

 The claim is advanced by the plaintiff that in the
 
 *202
 
 letter making the demand of May 18, 1933, the time for payment of the claim was extended to July 15, 1933, and by reason thereof it is claimed that the action filed on September 12, 1933, was less than two months from the aforesaid July 15, 1933, and, therefore, satisfied the requirement of Section 10509-133, General Code. It is further claimed that the action did not accrue until July 15, 1933, and by reason thereof the requirement of Section 10509-144, General Code, was satisfied, the last sentence of that section being as follows: “No cause of action against an executor or administrator shall be barred by lapse of time, until the expiration of two months from the time it accrues.” To accept such an argument would be to say that in any situation where the Superintendent of Banks or other creditor knew that he was unable to satisfy the requirements of the law and had failed to institute an action in time, he could, by merely writing a letter to the executor extending the time for payment, defeat the statute of limitations and other requirements- of the Probate Code. Under the statute the plaintiff had a right to sue the executor at once when the claim was rejected on May 23, 1933. His right to sue
 
 accrued
 
 at that time.
 

 Even in their final form the amended petition and supplemental petition do not state facts sufficient to constitute a cause of action. The petition reveals that the demand for payment and accrual of the claim occurred in May, 1933, while the supplemental petition alleges that the claim was presented to the executor on January 6, 1934, and rejected on January 8, 1934. These allegations in respect to time do not satisfy the limitation requirements of the sections of the Probate Code hereinabove set forth. There was no error in the action of the Court of Common Pleas in sustaining the demurrer.
 

 In the instant case the plaintiff calls particular attention to Section 10509-121, General Code, providing
 
 *203
 
 for the order in which debts of an estate are to be paid, and quotes: “Other debts as to which claims have been presented within four months after the appointment of the executor or administrator,” and then: “Debts due to all other persons.” It is asserted that “claims of all other persons” is so comprehensive that it includes not only those which have been reinstated by application to the Probate Court under Section 10509-134, but also those which have been presented after the four months period. It is urged that the latter claims should be paid if the estate is still open and the rights of third persons have not intervened. That issue was settled by this court in
 
 Beach, Recr.,
 
 v.
 
 Mizner, Exr.,
 
 131 Ohio St., 481, 3 N. E. (2d), 417, wherein it was decided that Sections 10509-112 and 10509-134, General Code, must be construed together and that they are statutes of limitations (or non-claim statutes) which bar creditors’ claims unless presented to an executor or administrator within four months after the date of appointment.
 

 The plaintiff also contends that the Superintendent of Banks in the instant case could file an action in court without first presenting a claim to the executor. This rests on the contention that the Superintendent of Banks is suing in a sovereign capacity. The issue of whether the Superintendent of Banks is acting in a sovereign capacity was squarely presented in
 
 State, ex rel. Fulton, Supt. of Banks,
 
 v.
 
 Bremer,
 
 130 Ohio St., 227, 198 N. E., 874, and this court there declared: “Such an action is for the benefit of the creditors of the bank and not for the benefit of the state of Ohio, and the Superintendent of Banks is barred by any statute of limitations that would have barred the creditor had he instituted the action.” In the opinion, on page 237, it is said: “Minutely dissecting this ease, what do we find? Simply that the state is collecting money. Whose money? Not one penny of it ever finds its way into the state treasury. True, the
 
 *204
 
 cost of liquidation is charged against the particular hank and is made by statute a preferred claim against its assets, but the state has no place in the cost bill.” In such a proceeding, where the Superintendent of Banks is acting for the sole benefit of the creditors of the bank, he is amenable to the laws governing the administration of estates the same as any other creditor.
 

 We consider next the proceedings had in case No. 26449.
 

 It is the claim of the plaintiff that the Probate Court committed prejudicial error in refusing to reinstate the claim for $6,700 for superadded liability against the estate of Harry E. Taylor, deceased. The finding of the Probate Court is set forth heretofore in the statement of the case. The statute (Section 10509-134) provides that after the statutory time for filing claims has elapsed if “the petitioner is not chargeable with culpable neglect in failing to present his claim within the time so prescribed” and if “justice and equity so require” the Probate Court may permit the petitioner to file his claim for allowance. In the determination of such a question the Probate Court is obliged to exercise its sound discretion in the light of all the circumstances. If that discretion has not been abused the decision will not be disturbed by a reviewing court.
 

 The Probate Court, in reviewing the dereliction of the plaintiff in these various matters, found that the petitioner was chargeable with “culpable negléct” and by reason thereof the petition for reinstatement of the claim was dismissed.
 

 What was the legislative intent in writing the words “culpable neglect” into Section 10509-134, General Code? In its broadest sense,
 
 neglect
 
 means to omit doing some particular thing. In a more generally accepted meaning
 
 neglect
 
 consists in not doing what ought to be done. As used in a legal sense,
 
 neglect
 
 means not doing what is required by law to be done.
 
 *205
 
 If a claim be not filed within the required time, there is neglect under the statute. It may or may not be culpable neglect.
 

 Culpable
 
 is a strong word. "Webster’s Dictionary gives the following synonyms: “Censurable, reprehensible, blameworthy.” Bouvier’s Law Dictionary defines it as follows: ‘
 
 ‘
 
 This means not only criminal but censurable; and when the term is applied to the omission by a person to preserve the means of enforcing his own rights, censurable is more nearly equivalent. As he has merely lost a right of action which he might voluntarily relinquish, and has wronged nobody but himself, culpable neglect would seem to convey the idea of neglect for which he was to blame and is ascribed to his own carelessness, improvidence or folly.
 
 Waltham Bank
 
 v.
 
 Wright,
 
 8 Allen (Mass.), 122.”
 

 As used in the statute the word “culpable” would seem to imply such neglect as may be ascribed to the party prosecuting the claim and not to something over which he has no control. By “culpable neglect” a party loses a right through his own carelessness rather than 'through the fault of another. It is such neglect as may be traced to the door of the creditor himself. It is more than a mere single failure to file a claim on time or within the required time. But if the failure to file is continued for a considerable period, the Probate ■Court, in the exercise of its discretion, may find that there has been culpable neglect. It all depends on the circumstances. Concededly the knowledge or lack of knowledge by the creditor as to the decease of the debtor or the administration of his estate should be considered in determining whether there has been culpable neglect.
 

 This section of the statute, Section 10509-134, General Code, was not intended to neutralize, cancel or render ineffective the mandatory provisions of Section 10509-112 or any other part of the Probate Code. It was only intended to empower the Probate Court, in
 
 *206
 
 the exercise of sound discretion, to soften the rigid requirements of the statutes, where otherwise the creditor might suffer rank injustice through no fault of his own. In the instant proceedings, the Probate Court apparently found that continued failure and neglect to comply with the mandatory provisions of the statutes were attributable to no one but the plaintiff himself. The court, having found that the petitioner was chargeable with culpable neglect, had no alternative but to dismiss the petition.
 

 In deciding .whether there had been “culpable neglect,” the Probate Court not only reviewed the circumstances in connection with the failure to file a claim within the required time but also the failure to file an action in the Court of Common Pleas within the time prescribed by statute. Section 10509-134 is not concerned with what has happened after the rejection of a claim. The statute in part reads: “And that the petitioner is not chargeable with culpable neglect
 
 in failing to present Ms claim
 
 within the time so prescribed.” (Italics ours.) The statute is primarily concerned with the failure in presenting the claim. If a claim has been presented to and rejected by the executor and thereafter a suit is filed thereon in the Court of Common Pleas, the issue then is one not for the Probate Court but for the Court of Common Pleas. In the instant case, the Probate Court not only reviewed the proceedings with reference to the presentation and rejection of the claim on different occasions but also what transpired in the Court of Common Pleas. The court was liberal in reviewing the situation.
 

 It is urged by plaintiff that the Probate Court erred in not permitting him to introduce evidence in addition to the documents showing the presentation and rejection of the claim in question. This additional evidence concerned the character of the claim. Prom the documentary evidence the court found the petitioner chargeable with culpable neglect. That being true in
 
 *207
 
 the instant case, there was no need to go farther. But if the court had found that the plaintiff had not been guilty of culpable neglect, it would then have been necessary for the court to be “of the opinion that justice and equity so require” before the claim could be reinstated. The court then would have been justified in making further inquiry as to whether justice and equity would require the filing of the claim. If all requirements are met, the statute states that the Probate
 
 Court11 may
 
 permit petitioner to file his claim for allowance.” It does not say “shall.” The discretion lodged in the Probate Court is, therefore, very broad. This is true not only in respect to the decision of the court but also in respect to the procedure. Although an answer was filed in the Probate Court in the instant case, the statute does not require it. Neither does the statute outline any formal procedure to be followed, the only requirement being the filing.of a petition, notice to all interested parties and a hearing.
 

 On February 7,1934, when the plaintiff filed his petition in Probate Court for reinstatement of the claim, he had already filed an action in the Court of Common Pleas upon a former demand and rejection of the same claim by the executor. He had an action pending at that time in the Court of Common Pleas on the merits of the claim. He had gone far beyond the date and act of presentation. The issue was then in the Court of Common Pleas and was no longer a subject for consideration by the Probate Court. In the light of all the facts and circumstances, we do not find that the Probate Court abused its discretion in refusing to reinstate the claim.
 

 The judgment of the Court of Appeals in each case will be affirmed.
 

 Judgments affirmed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams and Gorman, JJ., concur.